UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLEN CHEPIGA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONAIR CORPORATION,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Ellen Chepiga, by and through her undersigned attorneys, brings this action on behalf of herself and all others similarly situated, on personal knowledge of her activities and on information and belief as to all other matters against Defendant Conair Corp. ("Defendant"), and alleges as follows

## NATURE OF THE ACTION

1. This is a consumer class action on behalf of all owners of Cuisinart brand food processors who have been denied the full use and value of their machines for months, and continuing, due to a recall of and failure to replace the primary chopping blade included with the machine.

2. On December 8, 2016, Conair announced a recall and instructed the owners of 8 million Cuisinart brand food processors to stop using the primary chopping blade included with the machine immediately. Owners were instructed to contact the company for replacement blades, but months later – long after when many owners would have used the machines to prepare holiday meals – Cuisinart owners are still waiting for replacement blades. Cuisinart has

informed consumers that it may not be until mid-2017 that replacement blades begin to be shipped.

3. These 8 million machines were purchased based on Defendant's representations that the blades included with the machines would be usable as described on the packaging and in advertising. Instead, consumers have been denied the use of their machines for months, rendering the machines useless for many key tasks during the busy holiday cooking season and beyond.

4. Defendant's misrepresentations as to the usability of the machines has deceived and harmed consumers. Consumers relied on Defendant's representation that their Cuisinart food processors would include usable chopping blades. Instead, Defendant has instructed consumers not to use their product, leaving consumers with a machine useless for key tasks and far less valuable than one with functional blades. As a consequence, Plaintiff and all other members of the Class (as defined below) have suffered an ascertainable loss and thus have a private right of action against Defendant for damages.

## JURISDICTION AND VENUE

5. This court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of Plaintiff and the proposed Class members exceed $5,000,000, exclusive of interest and cost, and there is a diversity of citizenship between at least one member of the proposed Class and Defendant.

6. This Court has personal jurisdiction over Defendants because Defendants maintains their principal place of business in East Windsor, New Jersey.

7. Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and because Defendant maintains its principal place of business with the District.

## PARTIES

8. Plaintiff Ellen Chepiga is an individual residing in the state of New Jersey. Plaintiff owns one of the Cuisinart brand food processor subject to the blade recall and as a result of Defendant's misrepresentations, suffered injury in fact and suffered an ascertainable loss in the form of a prohibition on using her machine with the primary chopping blade and a diminution in the overall value of her machine. Plaintiff registered for a new blade on the www.recallcuisinart.com website but, as of the date of this complaint, has not received a replacement blade. Defendants have instructed her December 8, 2016 to cease using her machine with the chopping blade, rendering it useless for many key tasks.

9. Defendant Conair Corporation is a New Jersey corporation with its principal place of business at 150 Milford Road, East Windsor, NJ 08520. Cuisinart is a wholly-owned subsidiary of Conair Corporation with its principal place of business at 150 Milford Road, East Windsor, NJ 08520.

## FACTUAL ALLEGATIONS

*Background*

10. Cuisinart food processors are, according to the *New York Times*, an "expensive but beloved piece of equipment among epicures."[1] Inspired by French professional cooking tools, Cuisinart introduced the food processor to American home kitchens in the 1970s. Defendants market machines in their food processor lines as "designed to perform any food prep task your recipe calls for."[2]

---

[1] Kim Severson, "Cuisinart Recall 'Just Screwed Up the Holidays for a Lot of People," *New York Times*, Dec. 15, 2016, *available at* https://www.nytimes.com/2016/12/15/dining/cuisinart-recall.html?_r=1.

[2] *See* https://www.cuisinart.com/products/food_processors/fp-13dgm.html.

11. While some models perform other functions, the primary task of a Cuisinart food processor is to chop foods automatically, saving the chef the need to chop food by hand and doing so in a uniform and predictable manner. The machines generally have a detachable blade located at the bottom of a container and attached to a motor which rotates the blade at high speeds, thus chopping the food.



12. Though some models of the machines come with multiple blades, the primary blade used for most chopping functions is referred to as the "riveted blade." These blades have four rivets, are silver-colored stainless steel, and have a beige plastic center hub.



13.     Cuisinart has touted the strength and dependability of its riveted chopping blade as a primary attractive feature of its food processors. *See, e.g.,* "Cuisinart Elite Collection 14-Cup Food Processor (FP-14DC) Demo Video," available at Cuisinart's YouTube Channel at https://youtu.be/t_0n40lZKiQ.

14.     For many years. Cuisinart has repeatedly emphasized in advertising that its food processor will "make all your favorites."



*See, e.g.*, https://web.archive.org/web/20120208195402/http://www.cuisinart.com/products/food_processors/dlc-10s.html; https://web.archive.org/web/20110607233820/http://www.cuisinart.com/products/food_processors/dlc-10s.html.

### *Recall of Cuisinart Blades 'Just Screwed Up the Holidays for a Lot of People'*

15. On December 8, 2016, Defendant and the U.S. Consumer Product Safety Commission (CPSC) announced that consumers who owned certain models of Cuisinart food processors should cease using the riveted blade immediately. A press release from Conair instructed affected consumers to "stop using the riveted blades immediately unless otherwise instructed." The CPSC and Cuisinart were reacting to reports dating back to 2011 that metal shards would break off the blade and get into the food being chopped.

16. The recall covered twenty-two models of Cuisinart food processors sold between 1996 and 2015. The affected models included the following: CFP-9, CFP-11, DFP-7, DFP-11, DFP-14, DLC-5, DLC-7, DLC-8, DLC-10, DLC-XP, DLC-2007, DLC-2009, DLC-2011, DLC2014, DLC-3011, DLC-2014, EV-7, EV-10, EV-11, EV-14, KFP-7, and MP-14.

17. The covered models were manufactured in China and retailed for between $100 and $350 per unit.

18. In all, approximately 8 million units were subject to the recall, making the Cuisinart recall one of the three largest appliance recalls in U.S. consumer protection history.

19. A press release from Conair instructed affected consumers to "stop using the riveted blades immediately unless otherwise instructed."

20. Consumers were directed to a website, www.recallcuisinart.com, to submit a request for a replacement blade. Upon entering information to verify that their machine was subject to the recall, consumers were directed to "STOP using the riveted blade immediately."



21. As shown in the below figure, when impacted consumers like Plaintiff and the Class entered their information into Defendant's recall website they were instructed in no uncertain terms to "STOP using the riveted blade immediately":

## Cuisinart Blade Recall Form

> Your food processor is one of the items designated for the voluntary recall. Please STOP using the riveted blade immediately.

22. As the riveted blade is the primary chopping blade for the machine, instructions to cease using it means that the machine is essentially useless for key tasks.

23. Many consumers were dismayed that their machines were unusable as a result of the recall. "Cuisinart just screwed up the holidays for a lot of people," once consumer stated in a *New York Times* article.

*Months Later, No New Blades*

24. Despite assurances that they would be shipped replacement blades, more than two months after the recall was issued, consumers are still awaiting new blades.

25. On February 4, 2017, Defendant sent registered affected users an email stating that replacement blades were not yet manufactured and ready for shipping. Moreover, Defendant offered no date certain as to when the replacement blades would be shipped. Instead, affected consumers were provided an interactive recipe book for download – which included recipes that required food to be chopped, which consumers would have to do by hand because the machines they had purchased for that purpose were unusable.

26. Another email dated February 17, 2017, was sent by Defendant to registered affected users stating that overwhelming demand for replacement blades had delayed their shipment, and new blades may not be shipped until as late as June 15, 2017.

27. During this time, however, Defendant continued to sell new food processors with chopping blades not subject to the recall. Defendant decided to prioritize its own profits by

selling the new chopping blades instead of providing them to their loyal customers subject to the recall.

28. Despite having had complaints about the defective blades dating back as far as 2011, Cuisinart did not manufacture replacement blades to have available for consumers when the recall was issued. Instead consumers have been unable to use their machines for months.

29. Many consumers expressed dismay over the continued unusability of their Cuisinart machines. "My patience is running out . . . I am currently looking for a non-Cuisinart and non-Conair alternative for my kitchen."[3]

30. Consumers possess machines purchased for $100 to $350 that have been unusable for chopping and related for more than two months and counting. This has significantly diminished the value of those machines. Had consumers known that they would have lost the use of the key chopping functionality of their food processor without advance warning, for an extended period, and spanning the December and January holiday season, consumers would have paid less for Defendant's Cuisinart food processors. Plaintiffs have lost the ascertainable value of the use of their machines for key chopping tasks during the time period from December 6, 2016 to the present, and continuing. Additionally, the recall likely negatively impacted the resale value of the machines.

## CLASS ALLEGATIONS

31. Plaintiff brings this action on behalf of herself and members of a Class defined as follows:

---

[3] Sophia Tewa, "After massive Cuisinart recall, consumer patience 'running out'," *Stamford Advocate*, Feb. 8, 2017, *available at* http://www.stamfordadvocate.com/news/article/After-massive-Cuisinart-rcall-consumer-patience-10904335.php.

> All person or entities who own a Cuisinart food processor covered by the December 8, 2016 recall who lost use of the machine's chopping blade within six years of the date of this Complaint.

32. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure 23 ("Rule 23"), as the Class meets all of the requirements of Rule 23:

 *a.*  ***Numerosity:***  The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Class contains millions of customers who have been damaged by Defendant's misrepresentations as alleged herein. The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by Defendant, however, and thus potential class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

 *b.*  ***Existence and Predominance of Common Questions of Law and Fact:*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Common questions of law and fact include, but are not limited to, the following:

> i. Whether Defendant's actions constitute misrepresentations and consumer fraud;
>
> ii. Whether Plaintiff and the class had their machines rendered unuseable for months and suffered a loss during the affected period and beyond;
>
> iii. Whether Plaintiff and Class members were damaged as a result of Defendant's misrepresentations and consumer fraud, the amount of their monetary loss, and the proper measure of those damages.

   *c.*  **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

   *d.*  **Adequacy of Representation**: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

   *e.*  **Superiority**: A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them by Defendant. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding and presents no unusual management difficulties under the circumstances here.

### NOTICE TO N.J. ATTORNEY GENERAL OF ACTION

33. Pursuant to N.J. Stat. Ann. § 56:8-20, a copy of this Complaint will be mailed to the Attorney General within ten days of the filing of this Complaint.

### COUNT I

### Violation of New Jersey's Consumer Fraud Act § 56-8:1 *et seq.*

34. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 29 above, as if set forth fully herein.

35. New Jersey's Consumer Fraud Act ("CFA") prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . .

N.J.S.A. § 56-8:2.

36. Defendant's incorporation, headquarters and principal place of business is New Jersey and is a person under the meaning of the CFA.

37. In the conduct of its business, Defendant engaged in fraudulent acts and practices by offering Cuisinart food processor machines as functional chopping machines, while the affected machines were not in fact functional as claimed.

38. Defendant's fraudulent acts alleged above concealed information that had a tendency or capacity to mislead, tended to create a false impression in consumers, and were likely to (and did in fact) deceive reasonable consumers, including Plaintiff and the other members of the Class.

39. Plaintiff and the other members of the Class suffered ascertainable losses, caused by Defendant's conduct, by suffering a loss caused by the loss of key functionality of Cuisinart food processors caused by Defendant's instruction on December 6, 2016 to stop using the chopping blade. Thus, Plaintiff and the other members of the Class were injured by Defendants' conduct when the recall was issued and the machines were rendered unusable.

40. As a direct and proximate result of Defendant's violations of the CFA, Plaintiff and the other Class members have suffered injury-in-fact or actual damage.

41. Because Defendant's conduct caused injury to Plaintiff and the other members of the Class, they seek recovery of their actual damages, discretionary treble damages, punitive damages, reasonable attorneys' fees and costs, and any other just and proper relief available under the CFA

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

A. Certifying the Class as requested herein;

B. Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

C. Awarding Plaintiff and the proposed Class members damages;

D. Awarding attorneys' fees and costs; and

E. Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff and the Class hereby request a jury trial on all claims so triable.

Dated: February 17, 2017

Respectfully submitted,

*/s/ John D. Radice*

John D. Radice
April D. Lambert (*pro hac vice* forthcoming)
RADICE LAW FIRM, P.C.
34 Sunset Blvd
Long Beach, NJ  08008
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
alambert@radicelawfirm.com

*Attorneys for Plaintiff and Proposed Class*